THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 1:18-cr-00141-MR-WCM

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> FRANK MICHAEL LUCAS, ) <br> ) <br> Defendant. ) <br> _____ ) | **REDACTED ORDER** |

**THIS MATTER** is before the Court on the Defendant's "Verified Motion for Compassionate Release and or Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A)." [Doc. 32].[1]

**I.  BACKGROUND**

On June 28, 2018, deputies from the Jackson County Sheriff's Office ("JCSO") responded to a call made by the Defendant Frank Michael Lucas, who reported that his ex-girlfriend was in his camper and would not leave. [Doc. 23: PSR at ¶ 14]. When the officers became concerned that the

---

[1] The Defendant moved to file his motion under seal. [Doc. 33]. The Court granted that motion in part and directed the Clerk of Court to place redacted versions of the Defendant's motion and Exhibit A thereto on the public docket. [Doc. 35]. Due to the sensitive nature of the Defendant's request, the Court has entered both a sealed and a redacted version of this Order.

Defendant's ex-girlfriend was the victim of a sexual assault, the officers asked for and received the Defendant's permission to go inside the camper with the ex-girlfriend to try and find her clothes. [Id.]. While in the camper, officers discovered a semi-automatic pistol in a holster on the couch. [Id.]. After removing the magazine, the officers left the weapon where they had found it. [Id.]. Officers subsequently contacted the Defendant's state probation officer, who confirmed that the Defendant was a convicted felon, was currently on probation, and could not possess any firearms. [Id. at ¶ 15]. The probation officer instructed the officers to detain the Defendant until probation officers could arrive and conduct a warrantless search of the Defendant's person, his camper, and his vehicle. [Id. at ¶ 15].

During the search of the camper, the probation officers found a bag containing approximately one gram of methamphetamine concealed in the vent return area. [Id. at ¶17]. Police officers field tested the substance and confirmed that it contained methamphetamine. [Id.]. The probation officers found several more items of contraband during the search, including two sets of scales, a box of baggies used to package drugs, a gallon-sized bag that contained approximately three grams of crystal methamphetamine, several firearms and ammunition, and $7,468 in cash, which had been packaged in bundles and in a shoe box in the Defendant's vehicle. [Id. at ¶ 18].

Based on the contraband discovered by the probation officers, the Defendant was arrested and charged with several state offenses, including possession with intent to distribute methamphetamine. [Id. at ¶ 19]. After being released on bond, the Defendant failed to report to his probation officer. [Id.].

The United States Drug Enforcement Administration, which learned of the Defendant through the investigation of another methamphetamine trafficker, began to focus on the Defendant. Through their investigation, officers learned that the Defendant was distributing large quantities of meth in Jackson, Swain, Macon, Haywood and Cherokee Counties and regularly possessed firearms in furtherance of his drug distribution activities. [Id. at ¶ 20-22, 32].

On October 10, 2018, Jackson County investigators received a tip that the Defendant was on his way home with "at least a kilo of dope." [Id. at ¶ 23]. Officers conducted a traffic stop in the early morning hours of October 11th, 2018. [Id. at ¶ 24-25]. During a search of the vehicle, officers found a kilogram-sized object wrapped in black electrical tape on the passenger floorboard, which was later determined to be methamphetamine, as well as four rounds of ammunition in the rear seat. [Id. at ¶¶ 26-28]. A subsequent search of the cellphones located in the vehicle revealed a number of

3

communications between the Defendant and known drug traffickers. [Id. at 29].

The Defendant was charged with a number of state offenses, including trafficking methamphetamine. [Id. at ¶ 28]. In subsequent jail calls, the Defendant spoke to a known crystal meth dealer, as well as his ex-girlfriend, asking them to pawn some of his belongings, including firearms, so that he could make bond. [Id. at ¶¶ 30, 31]. The Defendant also discussed who owed him money and tried to coordinate a drug pick up. [Id.].

On November 5, 2018, an officer with the Swain County Sheriff's Office ("SCSO") was conducting a check of the pawn tickets at Joe's Pawn Shop in Bryson City, North Carolina when he saw that the Defendant had pawned a gun there on October 25, 2018 in return for $150. After confirming the Defendant's prior felony convictions, the officer seized the firearm and swore out a warrant for the Defendant's arrest. [Id. at ¶ 33]. In a subsequent interview, the Defendant admitted that he had pawned the firearm. [Id. at ¶ 34].

On December 4, 2018, a federal grand jury indicted the Defendant and charged him with possession with intent to distribute a quantity of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (Count 1); possession of a firearm in furtherance of a drug trafficking crime, in violation

4

of 18 U.S.C. § 924(c)(1)(A) (Count 2); two counts of possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §922(g)(1) (Counts 3 and 5); and possession with intent to distribute 500 grams or more of a mixture containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (Count 4). [Doc. 1]. The Defendant pled guilty pursuant to a written plea agreement to Count 4, and the remaining charges were dismissed. [Docs. 12, 15].

In advance of sentencing, the probation office prepared a Presentence Report. Based on the parties' agreement that the Defendant was accountable for 1,004 grams of methamphetamine, the probation officer calculated the Defendant's base offense level to be 30. [Doc. 23: PSR at ¶ 44]. Two levels were added because the Defendant possessed at least four firearms in connection with his drug trafficking activities. [Id. at ¶ 45]. With a three-level reduction for acceptance of responsibility, the Defendant's total offense level was calculated to be 29. [Id. at ¶¶ 51-53].

As for the Defendant's criminal history, the Defendant scored a total of ten points for his prior convictions, which included convictions for first degree burglary, possession of methamphetamine, and multiple counts of theft. [Id. at ¶¶ 56-70]. Two criminal history points were added because the Defendant was under a criminal justice sentence at the time of the present offense,

5

resulting in a total criminal history score of 12 and a criminal history category of V. [Id. at ¶¶ 71, 72]. Based on a total offense of 29 and a criminal history category of V, the Defendant's advisory guidelines range was calculated to be 140 to 175 months' imprisonment.[2] [Id. at ¶ 109].

The Court sentenced the Defendant on November 21, 2019, to a total of 160 months' imprisonment, to be served consecutively to any then undischarged term of imprisonment either heretofore or hereafter imposed by any state or federal court. [Doc. 26: Judgment at 2]. The Defendant did not appeal. The Defendant is currently incarcerated at FCI Butner Medium I, and his projected release date is March 29, 2029.[3]

In November 2023, the Defendant moved pursuant to 18 U.S.C. § 3582(c)(2) and Part A of Amendment 821 for a reduction in his sentence. [Doc. 31]. The Court denied that motion, reasoning that the revision to §

---

[2] Had the Defendant pled guilty to or been found guilty of Count 2, he would have been subject to a mandatory consecutive sentence of five years' imprisonment. Additionally, were it not for the drug quantities outlined in the written Plea Agreement, the Defendant could have been held accountable for 2,405.88 grams of methamphetamine mixture [Doc. 23: PSR at ¶ 36], resulting in a base offense level of 32. After adjustments for the possession of firearms and the acceptance of responsibility, the total offense level would have been 31. An offense level of 31 and a criminal history category of V would have produced a guideline imprisonment range of 168 to 210 months.

[3] See https://www.bop.gov.mobile/find_inmate/byname.jsp#inmate_results (last visited Oct. 30, 2024).

4A1.1 had no impact on the calculation of the Defendant's criminal history category or his advisory guidelines range. [Doc. 31].

The Defendant now moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). [Doc. 49]. For grounds, the Defendant cites his efforts at rehabilitation while incarcerated, ███████████████████████████████████████████████████████████████████████████████████████████████████████ [See Doc. 32 at 3].

## II. DISCUSSION

Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits a defendant to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The Defendant indicates in his motion that he has exhausted his administrative rights with the BOP. Accordingly, the Court will proceed to address the merits of the Defendant's compassionate release request.

As is relevant here, the Court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons

if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. The Sentencing Commission amended § 1B1.13 effective November 1, 2023, to address the amendment to § 3582(c)(1)(A) authorizing courts to grant a motion for a sentence reduction based on a defendant's own motion. The amended policy statement also sets forth a list of specified extraordinary and compelling reasons, considered either singly or in combination, that can warrant a reduction in sentence, including: (1) the defendant's medical condition, including a terminal illness or serious medical or physical condition that substantially diminishes the defendant's ability to provide self-care or requires long-term or specialized medical care; (2) the defendant's age, if the defendant at least 65 years old, is experiencing a serious deterioration in physical or mental health, and has served at least 10 years or 75 percent of his or her term of imprisonment; (3) certain family circumstances, such as the death or incapacitation of the defendant's child, or where the defendant

would be the only available caregiver for an incapacitated family member; (4) where the defendant was a victim of abuse while in custody; (5) any other reasons that are similar in gravity to the aforementioned reasons; and (6) in the event of an "unusually long sentence," the defendant has served at least 10 years of the term of imprisonment, and there has been a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) that would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed. U.S.S.G. § 1B1.13(b)(1)-(6). With respect to rehabilitation, the policy statement states that a defendant's rehabilitation, by itself, is not an extraordinary and compelling reason for compassionate release, but "may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." Id. § 1B1.13(d).

Here, the Defendant cites primarily his rehabilitation efforts while in prison as grounds for his compassionate release request.[4] Specifically, the

---

[4] In his motion [Doc. 32 at 9], the Defendant makes a passing reference to § 1B1.13(b)(6) as a basis for relief. However, the Defendant has not served ten years of his sentence, nor has he identified any change in the law since 2018 that would produce a gross disparity between the sentence he is serving and the sentence he would likely receive today.

9

Defendant points to: (1) his excellent relationships with staff and exemplary work evaluations; (2) the support system that will be in place upon his release; (3) his completion of several rehabilitation and educational programs, including his GED and a non-residential drug abuse program; ███

███████████████████████████████████████████████

███████████████████████████████████████████████.

However, the Defendant's efforts at rehabilitation, as commendable as they might be, cannot by themselves constitute extraordinary and compelling reasons for a reduction of his sentence.[5] See U.S.S.C. § 1B1.13(d).

Even if the Defendant could establish an extraordinary and compelling reason, this Court still must consider the § 3553(a) factors, as "applicable," as part of its analysis of determining whether a sentence reduction is warranted. See § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020).

Here, the Defendant's offense conduct was extremely serious. He was responsible for distributing large quantities of methamphetamine, and he regularly possessed firearms during these drug trafficking activities.

---

[5] ████████████████████████████████████████████
████████████████████████████████████████████
█████████████████ ███████████████████████████
████████████████████████████████████████████

Additionally, the Defendant has a serious criminal history, with multiple convictions for theft and burglary, as well as possession of methamphetamine. He was also on probation at the time that he committed the instant offense. Based on the Defendant's history and characteristics and the need to protect the public from further crimes, the need to provide just punishment, and the need to deter Defendant and others from engaging in similar criminal activity, the Court concludes that his sentence of 160 months in prison is sufficient but not greater than necessary to accomplish the § 3553(a) sentencing objectives.

For all these reasons, the Court concludes that the Defendant has failed to establish an "extraordinary and compelling reason" for a sentence reduction under § 3582(c)(A)(1)(i) and the § 3553(a) factors weigh in favor of his continued incarceration. Accordingly, the Defendant's motion for compassionate release is denied.

**IT IS, THEREFORE, ORDERED** that the Defendant's "Verified Motion for Compassionate Release and or Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A)" [Doc. 32] is **DENIED**.

**IT IS SO ORDERED.**

Signed: November 5, 2024

Martin Reidinger
Chief United States District Judge